# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

SHANE STEVENS,

                               Plaintiff,

        v.                                       3:15-CV-524
                                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

---

PETER A GORTON, ESQ., for Plaintiff

MARIA P. FRAGASSI SANTANGELO, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, by the Honorable Lawrence E. Kahn, United States District Judge, by Order dated October 28, 2015 (Dkt. No. 15), in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits on June 28, 2010, alleging disability beginning June 30, 2009.  (Administrative Transcript ("T") at 10, 187-93). The applications were denied initially on November 3, 2010. (T. 80-81).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 31, 2012. (T. 33-53).  On March 5, 2012, ALJ Elizabeth W. Koennecke found plaintiff was not disabled. (T. 82-102).  The Appeals Council vacated the hearing

decision on June 13, 2013, and remanded the case back to ALJ Koennecke for a supplemental hearing and a redetermination of disability. (T. 103-106).

On December 16, 2013, the ALJ held a supplemental hearing at which plaintiff and vocational expert Amy Kutschbach testified. (T. 54-79). On March 4, 2014, the ALJ issued a decision finding that plaintiff was not disabled from the alleged onset date through the date of the decision. (T. 7-32). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 25, 2015. (T. 1-4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the supplemental hearing on December 16, 2013, plaintiff was 40 years old. (T. 38, 187). He resided with his wife and two children. (T. 57). He held a GED and had completed professional training as a tool and die machinist. (T. 38).

His employment history included work as a restaurant cook and, most recently, as a machinist in a manufacturing facility. (T. 229).

Plaintiff had received mental health treatment since at least 2006, when he underwent electroconvulsive therapy ("ECT") for what he described as "rapid-cycling bipolar" disorder, although the record does not include a formal diagnosis to that effect. (T. 14, 314). Since at least 2010, plaintiff has received regular psychiatric treatment, including medication. His treating providers have identified a variety of mental impairments, including post-traumatic stress disorder ("PTSD"), anxiety disorder, depression, and attention deficit disorder, as well as substance abuse issues. (T. 318, 332, 391, 511). His reported symptoms include mood swings, suicidal ideation, poor energy and motivation, feelings of anxiety and agitation, difficulties with concentration, sleep problems, and memory loss. (T. 58, 60, 66, 292, 307, 309-11).

Of these symptoms, plaintiff reported the greatest difficulty with his memory loss, a condition that he believed was a side effect of the prior ECT treatment. (T. 39, 292). He reported that as the memory loss progressed, he had difficulties completing tasks because he would forget what he was doing, and had lost the ability to visualize images in his head while reading or trying to recall people or events. (T. 40, 43, 256, 292). Despite his experience as a cook, he could no longer prepare meals without consulting a cookbook, and could not remember any of his machinist training. (T. 40, 283). He reported that his wife reminded him to take care of personal needs such as showering or brushing his teeth. (T. 292). Due to concerns that he could not be left alone to watch the children, his wife had stopped working so that she could be home

with him. (T. 389, 419).

The ALJ's decision and the parties' briefs provide a detailed statement of the medical and other evidence of record. (T. 16-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**[1]

As an initial matter, the ALJ determined that plaintiff met the insured status requirements through June 30, 2014. (T. 13). The ALJ next determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 30, 2009. (T. 14). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: "poly-substance abuse disorder and a mental impairment (variously characterized)." (*Id*.). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform a full range of work at all exertional levels, with certain non-exertional limitations. (T. 17-20). The ALJ concluded that plaintiff retained the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact with others in order to carry out simple tasks. (T. 18-19). The ALJ found that plaintiff should avoid work

---

[1] The court is only reviewing ALJ Koennecke's March 4, 2014 decision.

6

requiring more complex interaction or joint effort to achieve work goals, but that he was able to handle work-related stress in that he was able to make occasional decisions directly related to the performance of simple tasks in a stable, unchanging work environment. (*Id*.). In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 19). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the medical evidence. (T. 20). The ALJ next determined that plaintiff was unable to perform his past relevant work as a machinist. (T. 24). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs such as hand packager, cleaner, or kitchen helper. (T. 25.) Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, June 30, 2009, through the date of the decision. (T. 34).

## V. ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due

to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 11-20, 23-29) (Dkt. No. 14).

2.    The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 20-25).

3.    The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 19-20).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 12-27) (Dkt. No. 17). For the reasons stated below, the court concludes that the ALJ erred in evaluating the medical opinion evidence and finds that her RFC determination was not supported by substantial evidence. As a result, the ALJ's evaluation of plaintiff's credibility, the ALJ's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court orders a remand for further administrative proceedings to properly assess the medical evidence and plaintiff's credibility in connection with the Commissioner's RFC determination.

**DISCUSSION**

**VI.**    <u>**RFC/CREDIBILITY**</u>

    **A.**    **Legal Standards**

        **1.**    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an

equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v.*

*Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function.  20 C.F.R. § 416.929(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 416.929(c)(3).

## B. Application

As noted above, the ALJ found that plaintiff could perform work at all exertional levels, but was limited to simple tasks in a stable, unchanging environment. (T. 18-19). In reaching this RFC determination, the ALJ placed significant weight on the opinion of Dr. Sara Long, who performed a consultative psychiatric examination of plaintiff on October 10, 2010. (T. 22, 358-62). In rendering her opinion, Dr. Long noted that she had "minimal information" regarding plaintiff's medical history, and that "[n]europsychological or IQ testing may help clarify [the] nature and degree of [plaintiff's] memory loss." (T. 358, 361).

In January 2012, plaintiff was evaluated by Dr. Mary Ann Moore at the request of the Broome County Department of Social Services ("DSS"). (T. 490-508). This evaluation included the type of neuropsychological and IQ testing that Dr. Long had suggested might clarify plaintiff's cognitive difficulties and reported memory loss. (T. 361, 492-99). Based upon her evaluation of plaintiff and the test results, Dr. Moore opined that plaintiff had significant functional limitations associated with his mental impairments. (T.497-98). The ALJ assigned this opinion "very little" weight, concluding that the findings were inconsistent with the medical record, and that the test results did not reliably reflect plaintiff's functional limitations. (T. 23).

In doing so, the ALJ improperly substituted her own judgment for competent medical evidence. This, along with other errors described below, resulted in an RFC determination that was not supported by substantial evidence. The ALJ's erroneous evaluation of the medical evidence also influenced her evaluation of plaintiff's hearing

11

testimony, requiring reconsideration of plaintiff's credibility on remand.

## 1.    RFC Determination

Dr. Long performed a psychiatric consultative examination of plaintiff on October 4, 2010. (T. 358-362).  She noted that plaintiff was "cooperative with good social skills" during the examination, but also described him as a "poor reporter, giving minimal information, stating that he does not remember . . ." (T. 358).  For example, plaintiff stated that he did not know when he received ECT treatment, only that it "was not this year and not last year." (T. 358).  Plaintiff also reported that he had received "possible treatment for anxiety," but that it was "years ago."  (T. 358).  Treatment records show that plaintiff complained of anxiety a few months prior to the consultative examination, during a May 2010 office visit with Dr. Christina King.  (T. 316).  He was referred for a psychiatric evaluation and was prescribed daily anxiety medication in June 2010. (T. 311, 316).  Plaintiff also reported to Dr. Long that he had no drug or alcohol abuse issues, despite a documented history of cocaine use and having advised his treating physician in May 2010 that he was self-medicating with marijuana and alcohol. (T. 301, 303, 309, 319, 358).  Plaintiff also advised Dr. Long that he had no recollection of violence or child abuse, but testified at his hearing that his PTSD arose from traumatic abuse that he had suffered as a child. (T. 60, 358, 360, 528).  Because Dr. Long did not have this information at the time of the consultative examination, her diagnosis and consultative opinion incorporated plaintiff's inaccurate description of his

medical history.[2] (T. 361).

During the examination, Dr. Long found that plaintiff demonstrated appropriate eye contact, and exhibited clear and fluent speech with a full range of appropriate affect and thought content. (T. 359). Aside from plaintiff's request that the door be left open during the evaluation, Dr. Long did not observe any other symptoms of anxiety. (*Id*.). Dr. Long concluded that plaintiff had adequate attention and concentration after observing him subtract 3 from 20 "accurately and slowly" on paper. (T. 359). She also found that plaintiff "appeared to be functioning on an average intellectual level with a somewhat limited fund of information." (T. 360).

Dr. Long tested plaintiff's memory skills by naming three objects and having plaintiff repeat them immediately. (T. 359-60). After five minutes, plaintiff stated that he did not remember that he was given any objects to memorize. (T. 359). Plaintiff partially completed a recitation of digits, but Dr. Long discontinued the test due to a lack of response. (*Id*.). Dr. Long considered plaintiff's complaint that his memory was adversely affected by ECT, but noted that recent ECT procedures usually result in only temporary memory impacts. (T. 360). She also opined that "[e]arlier ECT procedures historically had greater long-term effects so it does matter when ECT was performed and the procedures used." (*Id*.). However, she considered plaintiff's description of "so wide a range of memory loss" to be unusual, and an "apparent exaggeration" of his symptoms. (T. 360-61).

---

[2] Many of the treating and consulting physicians in the record commented on plaintiff's refusal to cooperate during medical evaluations, particularly on a first visit, and his general distrust of the "system." (T. 316, 391, 416, 428, 433, 473, 482, 501).

Based upon her examination of plaintiff, Dr. Long opined that plaintiff was able to follow and understand simple directions and instructions and was able to perform simple tasks independently. (T. 360). She concluded that plaintiff was able to maintain attention and concentration, maintain a regular schedule, and able to learn some new tasks. (*Id*.). Dr. Long further opined that plaintiff appeared able to relate adequately with others and was capable of adequate stress management. (*Id*.). Because Dr. Long was not aware that plaintiff was already receiving treatment for his anxiety at the time of the consultative examination, she recommended that plaintiff pursue psychotherapy to address the issue. (T. 361).

Dr. Long cautioned that her consultative examination results "appear to be consistent with possible cognitive problems, which may interfere with [plaintiff's] ability to function on a regular basis." (T. 360). Dr. Long also noted several times in her report that her evaluation was hampered due to a lack of information regarding plaintiff's medical history. (T. 358, 360-61). She opined that neuropsychological or IQ testing "may help clarify nature and degree of memory loss," but that it would be necessary for plaintiff to extend good effort to obtain reliable results. (T. 361). Dr. Long further noted that "[i]t would not be expected that an IQ test would be reliable, but would help rule out malingering by comparing results with observable function." (T. 360).

An opinion based upon a single examination generally deserves limited weight. *Sweet v. Astrue*, 32 F. Supp. 3d 303, 315 (N.D.N.Y. 2012) (quoting *Crespo v. Apfel*, No. 97-CIV-4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (consulting

physician's opinions "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day.")). However, the opinion of a consultative examiner may constitute substantial evidence supporting an ALJ's decision when the opinion is supported by the medical evidence in the record. *Frawley v. Colvin*, No. 5:13–CV–1567 (LEK/CFH), 2014 WL 6810661, *10 (N.D.N.Y. Dec. 2, 2014); *Wright v. Colvin*, No. 5:12-CV-440 (MAD/VEB), 2013 WL 3777187, at *18 (N.D.N.Y. July 17, 2013); 20 C.F.R. §§ 416.912(b)(8), 416.913(c), & 416.927(e)(2).

In this case, the ALJ assigned Dr. Long's opinion "significant weight" based upon the physician's "programmatic expertise and examination of the claimant," as well as her opinion's consistency "with the longitudinal medical evidence in the record." (T. 23). In reaching this conclusion, the ALJ's decision did not discuss the inaccurate information that Dr. Long relied upon to form her opinion, such as plaintiff's denial that he had received any recent psychiatric treatment or that he had a history of substance abuse. The ALJ's decision also did not address Dr. Long's stated concern that she was basing her opinion on incomplete information. (T. 358, 360-61). The ALJ appears not to have considered that Dr. Long might have modified her opinion regarding plaintiff's functional limitations if she had an opportunity to review plaintiff's actual medical history, or to analyze the results of the IQ and other tests that were performed subsequent to her examination. *Sweet*, 32 F.Supp. 3d at 314 (finding that ALJ erred in relying upon consulting examiner's opinion that was based on incomplete data when more recent medical records may have altered that opinion).

Therefore, the court finds that the ALJ's assignment of "significant weight" to Dr. Long's opinion was not supported by substantial evidence.[3]

For similar reasons, the ALJ also erred by assigning "significant weight" to the opinion of non-examining state psychological consultant Dr. Kamin, who reviewed plaintiff's available medical records and completed a mental RFC assessment on October 19, 2010. (T. 23, 363-80). Dr. Kamin opined that plaintiff had mild restrictions performing activities of daily living and in social functioning, but that he was able to understand, remember, and carry out very short and simple instructions. (T. 373, 377). Dr. Kamin concluded that plaintiff retained the ability to perform simple work. (T. 379).

An ALJ may rely upon the opinion of a non-examining State agency medical consultant, such as Dr. Kamin, because such consultants are deemed to be qualified experts in the field of social security disability. *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-52 (N.D.N.Y. 2012) (citing, *inter alia, Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")). However, the assignment of significant weight to a non-examining consultant's opinion is error when the consultant reviewed

---

[3] On remand, the Commissioner retains the discretion to decide whether a second consultative examination of plaintiff is warranted. *Amberg v. Astrue*, No. 08-CV-967 (LEK), 2010 WL 2595218, at *5 (N.D.N.Y. May 24, 2010); 20 C.F.R. § 404.1512(e)(1) (authorization to direct claimant "to attend one or more consultative examinations at our expense.").

an incomplete record that lacks notes or opinions by the plaintiff's treating psychiatrist. *See Coleman v. Colvin*, No. 14-CV-2383 (SAS), 2015 WL 1190089, at *10 (S.D.N.Y. Mar. 16, 2015). In this case, Dr. Kamin reviewed the medical evidence available in October 2010, which primarily consisted of treatment notes by plaintiff's primary care physician and Dr. Long's consultative examination (the limitations of which are described above). (T. 378-79). The full record available at the time of the ALJ's disability determination included treatment notes by treating psychiatrist Dr. Michael Lavin and social worker David Ruston, who saw plaintiff on a regular basis between March 2011 and August 2013. (T. 391-457, 510-11, 525-622). The record also included the DSS consultative examinations performed by Dr. Mary Ann Moore and Dr. Nathan Hare, and the associated test results. (T. 491-508). In assigning significant weight to Dr. Kamin's opinion, the ALJ failed to consider whether that opinion may have differed if Dr. Kamin had been able to review this evidence, which consisted of almost three years worth of additional psychiatric analysis of plaintiff. *Coleman,* 2015 WL 1190089, at *10; *see also Tarsia v. Astrue*, 418 Fed. App'x 16, 18 (2d. Cir. 2011) (remanding because it was unclear if non-examining consultant, whose opinion had been assigned substantial weight, had reviewed records from treating source).

Almost two years after Dr. Long issued her consultative opinion and expressed concern about the limited information that was available to her, the Broome County DSS referred plaintiff to Dr. Moore for a variety of psychological and intelligence tests. (T. 491-99). Plaintiff received a Full Scale IQ score of 62 on the WAIS-IV, a standardized intelligence test. (T. 496). Dr. Moore opined that this score would

indicate current functioning in the mild mental retardation range. (*Id.*) However, Dr. Moore felt that this result underestimated plaintiff's overall intellect, because his test scores "were greatly brought down by his visual processing speed which specifically indicated severe deficits in regards to visual memory . . . ." (T. 496). Dr. Moore found that plaintiff showed "borderline skills" in long-term visual memory and long-term auditory memory, specifically in regards to general information. (*Id.*). Plaintiff scored well on the WRAT-IV Reading test, but Dr. Moore opined that his memory problems may still make reading comprehension difficult. (T. 496).

The ALJ assigned "very little weight" to Dr. Moore's opinion, concluding that plaintiff's underperformance on the IQ test merely indicated that plaintiff was not performing up to his full potential in order to further his pursuit of disability benefits. (T. 23). In reaching this conclusion, the ALJ cited only the lack of "reliable evidence anywhere in the record that [plaintiff's] reported memory deficits are legitimate." (*Id.*). This statement ignores Dr. Long's recommendation that professionally administered neuropsychological or IQ tests were a potentially reliable method of evaluating plaintiff's memory. (T. 361). It also ignored references in the treatment record to the difficulty in assessing plaintiff's memory problems, as well as treating psychiatrist Michael Lavin's July 25, 2011 recommendation that "formal memory testing" was necessary. (T. 422, 426). By rejecting Dr. Moore's opinion solely in favor of her own interpretation of plaintiff's test results, the ALJ improperly substituted her own judgment for a competent medical opinion. An ALJ "is not free to set [her] own expertise against that of a physician who submitted an opinion or testified before [her]."

*Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.")

The ALJ considered and assigned "very little weight" and "no weight" to several other medical opinions submitted on plaintiff's behalf, including those of treating physicians Dr. King and Dr. Lavin, Dr. Shoalb Ahmed, who appears to have treated plaintiff on one occasion, and DSS consultative examiner Dr. Nathan Hare.[4] (T. 23). Because one of the cited reasons for discounting these opinions was their inconsistency with the opinions of Dr. Long and Dr. Kamin, the Commissioner should reconsider all medical opinions on remand in accordance with the factors set forth in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c). The court notes that the ALJ listed other reasons, such as the use of "check-box" opinion forms that did not provide an explanation for the findings, that may be an appropriate factor in discounting the weight assigned to one or more of these opinions. *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009).

---

[4] The ALJ rejected Dr. Hare's opinion as "wholly inconsistent with the longitudinal medical evidence," but also noted that "Dr. Hare's assessments are frequently submitted to the undersigned and always indicate no useful ability to function in multiple areas." Plaintiff's counsel has argued that this comment regarding prior opinions by Dr. Hare that are wholly unrelated to plaintiff is an impermissible consideration of evidence outside the record and demonstrates the ALJ's bias. (Pl.'s Br. at 29). The few courts to address this argument have split, either considering such commentary permissible so long as it is not the sole factor for discounting the medical opinion, *Miller v. Comm. of Soc. Sec.*, 172 F.3d 303, 305-306 (3d Cir. 1999), or finding such comments improper and requiring remand before a different ALJ. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). Because the ALJ's errors in weighing the Long, Kalin, and Moore opinions require re-consideration of all medical opinion evidence on remand, the court need not decide this discrete issue related to Dr. Hare.

## 2. Credibility

The ALJ's finding regarding plaintiff's credibility was largely based on her conclusion that "the medical evidence currently in the record paints a very clear picture of a claimant whose symptoms appear to get progressively worse as he becomes more invested in the process of receiving disability benefits." (T. 20). Because the ALJ erred in weighing the medical opinion evidence and in substituting her lay opinion for the competent medical opinions of record, her finding that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not credible was also flawed. On remand, the Commissioner should properly address the totality of the medical opinion and other evidence, re-assess plaintiff's credibility, and present the evidence upon which the Commissioner relies to support the RFC determination.

## VII. VOCATIONAL EXPERT

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed). This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the

national economy.'" *Id.* However, what constitutes a "significant" number is "fairly minimal." *Id.* (quoting *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[5] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar.

---

[5] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

## B. Application

The ALJ relied on her erroneous RFC finding in her formulation of hypothetical questions to the VE, and in the step five analysis that other jobs existed in significant numbers in the national economic that plaintiff could perform. (T. 19-21). Hence, the ALJ's ultimate determination that plaintiff was not disabled was also tainted, and the step five determination must be reconsidered on remand.

## VIII. __NATURE OF REMAND__

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). The court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot order a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

The court notes that plaintiff has appeared twice before ALJ Koennecke, and plaintiff's counsel has argued that bias influenced the ALJ's disability determination. (Pl.'s Br. at 29). The court acknowledges plaintiff's request that this matter be remanded to a different ALJ, but defers that decision to the discretion of the Commissioner. *Hartnett v. Apfel,* 21 F.Supp.2d 217, 222 (E.D.N.Y.1998) (*citing Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir.1993)) ("As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make.").

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with

this Memorandum Decision.

Dated:     June 8, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge